# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>$16,000.00 in United States Currency,<br><br>  Defendant. | 3:19-CV-319-MMD-WGC<br><br>**Default Judgment of Forfeiture and Final Judgment of Forfeiture** |

**I. FACTS**

On January 24, 2019 at approximately 2:15 P.M., Averill was driving a 2018 silver Nissan Altima bearing a Utah license plate on Interstate 80 in Washoe County, Nevada. Averill was the sole occupant of the vehicle.

A WCSO officer observed the Altima following a semi-truck at a distance of one-and-one-half car lengths and swaying over the fog line.

The WCSO officer initiated a traffic stop for following too closely and failure to maintain a lane in violation of Nevada law.

The WCSO officer approached the Altima and identified Averill through his Utah driver's license. Averill volunteered that he was trying to find the exit for the Boomtown Casino, where he was planning to stay.

Averill stated that the Altima was a rental from Enterprise Rent-a-Car.

The WCSO officer asked Averill about his destination. Averill replied that he was headed to Kelseyville, California near Clearlake to see his mother and planned to stay there until Monday or Tuesday. That was four to five days in the future from the date of the traffic stop. Through his training and experience, the officer knew that Clearlake and

its surroundings were a particularly high-production area for marijuana and frequented by traffickers of illegal drugs.

While completing a wants-and-warrants check and a warning citation, the WCSO officer engaged Averill in consensual conversation.

Averill stated that he travelled to Kelseyville every two to three months. Averill opined that Clearlake was a "dump," "hillbilly" town, and "crappy." The WCSO officer commented that Clearlake was a prevalent area for illegal marijuana grows. That prompted Averill to quickly state that Clearlake was quite far away from his destination. Through his training and experience, the officer believed that Averill was trying to distance himself from Clearlake and the locality's marijuana trade.

On January 24, 2018 at approximately 2:18 P.M. (three minutes after the initial stop), another WCSO officer arrived on scene to provide back up to the officer conducting the traffic stop of the Altima.

The lead WCSO officer advised Averill of his role as an interdiction officer and asked Averill whether his vehicle contained any illegal drugs or large amounts of currency. Averill replied that his vehicle contained no illegal drugs but that it did contain $15,000. According to Averill, he planned to provide the money to his brother, who lived with Averill's mother. Averill commented: (a) "we were thinking of getting a boat"; (b) his brother was "going to start looking for [the boat]"; and (c) his brother "ha[d] an idea" about the boat to purchase. Averill then stated that they had not identified a specific boat or any boat models to buy. When asked by the officer whether Averill's brother knew that Averill would be providing money for a boat, Averill responded that his brother "should" know because Averill had "talked to him about it." But, Averill then said that the money that he was bringing would be a "surprise" because of the timing.

During the conversation, Averill had consented to a search of his vehicle. While still completing the want-and-warrants check and the warning citation, the backup WCSO officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Altima.

Based on the positive alert, WCSO officers completed a search of the Altima. The search uncovered a black duffel bag in the rear passenger compartment containing four stacks of United States currency, bundled with rubber bands. Three of the bundles looked similar in size (the lead officer estimated each bundle to be $5,000), and a fourth bundle was smaller (the lead officer estimated it to be $1,000). Later, an official bank count would establish that the currency totaled $16,000. Averill had only declared $15,000 initially. After the search, Averill stated that there were "three" bundles of cash. When an officer confronted him about that number, Averill replied that there was an "extra thousand on the side" and that Averill "forgot about that."

Among other items, the search also uncovered: (a) empty duffel bags; (b) several new, medium-sized unconstructed United States Postal Service (USPS) boxes; (c) a small piece of paper displaying a Utah address and the phrases "UPS Customer Center" and "Hold for Pick-up"; (d) numerous new black plastic garbage bags; (e) numerous zip ties; and (f) packing tape with a dispenser. Through his training and experience, the lead WCSO officer believed that the duffel bags, USPS boxes, plastic garbage bags, zip ties, and note written on the small piece of paper were indicative of involvement in illegal-drug packaging, distribution, transport, and/or delivery.

The search also uncovered camping gear. During earlier conversations with investigators, Averill had not mentioned plans to go camping when visiting California. Instead, Averill had stated that he was visiting Kelseyville to see his mother. Through his training and experience, the lead WCSO officer believed that the camping gear was indicative of a plan to visit an actual marijuana grow site.

The lead WCSO officer further engaged Averill in consensual conversation.

The WCSO officer asked Averill where he had obtained the United States currency. Averill stated that he had received an annuity in October 2018, had withdrawn $9,000 from his bank, and had taken small amounts of money out of the bank over time.

The WCSO officer asked Averill if he had ever been arrested. Averill stated that he had a prior arrest for felony distribution of cocaine from 1991, which had resulted in a

five-year period of incarceration. A later criminal-history check revealed that Averill had a Distribution of Cocaine arrest from that time period that had resulted in a conviction and custodial sentence.

The WCSO officer also asked Averill whether he could contact Averill's brother, Craig Eddy. Averill consented and provided Eddy's phone number but then said that Eddy did not know that Averill was planning to provide the United States currency to him on that trip. Averill had said earlier that he and Eddy were planning to buy a boat with the currency and that Eddy should know about the money.

The WCSO officer was unable to reach Eddy at that point but did connect with Eddy immediately after the traffic stop. At that time, Eddy stated: (a) Averill was probably coming to visit for at least one week and up to two weeks; (b) Averill might be purchasing a "truck" during the trip; (c) Averill owed Eddy money "on and off"; and (d) Eddy did not know exactly how much money Averill owed him but guessed it was about $2,000. Eddy made no mention of plans to purchase a boat, during Averill's present trip or a later trip, or a sum of $15,000 or $16,000. Eddy's understanding of Averill's planned length of stay (one to two weeks) differed from Averill's (less than one week).

After uncovering the United States currency, investigators put the cash in a new large envelope and placed the envelope along the side of the road in the brush. A WCSO officer, who had not seen where the envelope was placed, deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine was a different canine than the canine that had been deployed in the vicinity of the Altima. The canine alerted to the presence of the odor of illegal drugs coming from the envelope of currency.

The lead WCSO officer asked Averill if the officer could contact his wife to ask her questions about the source of the United States currency and to try to corroborate the information that he had provided. Averill stated that he did not want to get her involved, that he did not tell her about the currency, that he did not generally tell her about "anything," and that she did not know that Averill was going to buy a boat.

///

At the conclusion of the traffic stop, a WCSO officer seized the United States currency and issued Averill a warning citation for following too closely. On February 13, 2019, the WCSO transferred the currency to the DEA.

The $16,000.00 in United States currency is the entirety of the defendant currency.

## II. PROCEDURE

On June 12, 2019, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $16,000.00 (defendant property):

    a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    b. is all proceeds traceable to all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. §801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

On June 13, 2019, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 3, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 4.

Pursuant to the Order, ECF No. 3, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant

property: the Complaint, ECF No. 1, the Order, ECF No. 3, the Summons and Warrant of Arrest in Rem for the Property, ECF No. 4, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice was sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 3; Summons and Warrant, ECF No. 4.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from June 15, 2019, through July 14, 2019. Notice of Filing Proof of Publication, ECF No. 5.

On June 26, 2019, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 9.

///

On June 26, 2019, the United States Attorney's Office served Donald Keith Averill by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 13, p. 3-28.

On June 26, 2019, the United States Attorney's Office served EAN Holdings, LLC, Attn: Corp. Security Liz Johnson, by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 13, p. 3-24, 29-33.

On July 24, 2019, Donald Keith Averill filed a claim. Claim, ECF No. 6.

On August 2, 2019, the United States filed a Motion to Strike the Claim of Donald Keith Averill. Motion to Strike, ECF No. 8.

On October 22, 2019, the Court denied the Motion to Strike Donald Keith Averill's Claim. Order Denying Motion to Strike, ECF No. 11.

On December 2, 2019, the Court dismissed Donald Keith Averill's Claim. Order Dismissing Claim, ECF No. 12.

No other person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

Donald Keith Averill is not in the military service within the purview of the Servicemembers Civil Relief Act. Exhibit 1.

Donald Keith Averill is neither a minor nor an incompetent person.

On January 21, 2020, the United States filed a Motion for Entry of Clerk's Default against the $16,000, Donald Keith Averill, EAN Holdings, LLC, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 14.

///

On January 22, 2020, the Clerk of the Court entered a Default against the $16,000, Donald Keith Averill, EAN Holdings, LLC, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 15.

## III. The Requirements for Default were met.

### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Fed. R. Civ. P. Supp. Rule G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at 3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at 1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of the complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations

8

in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B. The Forfeiture Requirements for Default Were Met.**

    a. <u>Judgment Sought</u>

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

    b. <u>Default and Entry of Default</u>

As shown above, the United States requested entry of Clerk's Default against the $16,000, Donald Keith Averill, EAN Holdings, LLC, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 14. The Clerk entered the Default as requested. ECF No. 15.

    c. <u>Notice</u>

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 5. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. Notice of Filing Service of Process, ECF No. 13.

    d. <u>Legal Sufficiency of the Complaint</u>

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint states where the seizure of the defendant property occurred and its current location. The Complaint identifies the statute under which the forfeiture action is brought. The Complaint alleges

*///*

sufficiently detailed facts to support a reasonable belief that the United States will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. Rule G(2); Complaint, ECF No. 1.

### e. Status of Potential Claimants

On July 24, 2019, Donald Keith Averill filed a claim. Claim, ECF No. 6.

On August 2, 2019, the United States filed a Motion to Strike the Claim of Donald Keith Averill. Motion to Strike, ECF No. 8.

On October 22, 2019, the Court denied the Motion to Strike Donald Keith Averill's Claim. Order Denying Motion to Strike, ECF No. 11.

On December 2, 2019, the Court dismissed Donald Keith Averill's Claim. Order Dismissing Claim, ECF No. 12.

## C. The Civil Requirements for Default Were Met.

### a. The Plaintiff would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the property, and that evidence is uncontested by Donald Keith Averill and EAN Holdings, LLC. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.")

### b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a clear case against the property and the Complaint sufficiently alleges the facts of the case.

///
///
///

#### d. The Amount of Money at Stake

The value of the property at stake was clearly established in the Complaint, ECF No. 1, and the property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 31 U.S.C. § 5317(c)(2).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency or illegal proceeds resulting from exchange or intended exchange of funds for a controlled substance or listed chemical under Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*

#### e. There Are No Possible Disputes of Material Fact

No issues of material fact exist and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    b. is all proceeds traceable to all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in

|   |   |   |
|---|---|---|
| 1 | | violation of Subchapter I of the Controlled Substances Act, 21 |
| 2 | | U.S.C. §801, et seq., and is subject to forfeiture to the United States |
| 3 | | pursuant to 21 U.S.C. § 881(a)(6). |
| 4 | c. | is all moneys, negotiable instruments, and securities used or intended |
| 5 | | to be used to facilitate violations of Subchapter I of the Controlled |
| 6 | | Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to |
| 7 | | the United States pursuant to 21 U.S.C. § 881(a)(6). |

  f. <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that the claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice and failed to file a valid claim and answer to the Complaint. There is no evidence of excusable neglect.

  g. <u>Public Policy Does not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimant did not file a valid claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimants] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
>
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at 3 (N.D. Cal. Feb. 13, 1996).

Denying the government's motion would not further public policy. While cases should be decided on the merits when possible, the claimant has not contested the facts of the complaint or the forfeiture of the property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is therefore appropriate. *See Covenant Care California*, 2018 WL 3429669, at 2.

**IV. Judgment**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to Donald Keith Averill, EAN

*///*

Holdings, LLC, and all persons or entities who may claim an interest in the defendant property and Final Judgment of Forfeiture as to the $16,000.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against Donald Keith Averill, EAN Holdings, LLC, and all persons or entities who may claim an interest in the defendant property in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $16,000 in United States Currency.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
HONORABLE MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

DATED: March 24, 2020